Technology Corporation v. Cellco Partnership. May it please the court, the central issue here in this appeal, although the district court did find that the claims were anticipated or some claims were anticipated and that other claims were rendered, in fact all the claims were rendered obvious under a combination of references, the central issue here in this appeal is what exactly is disclosed by the toy reference, the prior art reference referred to as the toy reference and whether or not the district court erred in concluding what was disclosed by that reference. Specifically, the parties at the district court level agreed to a, for purposes of the summary judgment motion, agreed to a construction of the term object and that construction was a unit of available to the user from a source on the network. So the question was whether the toy reference disclosed detecting or monitoring, detecting changes or monitoring objects of interest as that phrase has been agreed to by the parties. Specifically, in page seven of the district court's opinion at appendix A-10, the court refers to two passages in the toy patent where it's holding that the toy patent addresses monitoring objects or detecting changes in objects as opposed to processing incoming data streams. In particular, the court refers to passage of column 8 and a section that refers to a single reformatted transaction that is processed by the CPU. The court holds that this, or concludes that this is in fact an object. However, that particular reformatted transaction or data input is not the input into the system in the toy reference. The input into the system is still a data stream and that's, isn't that, isn't what, to what this judge was referring, isn't that part of the input? Isn't it subsumed in the input? You're right, I mean there's this data stream coming in in a toy, but isn't the item to which you referred an item in that data stream? That's correct. So that the information is contained in the data stream, but the toy reference and the hardware in figure two and described in column 7 and 8 that the court's referring to specifically receives an entire incoming data stream. And it's not a unit of data, it's a continuous real-time data stream. And since the parties agreed that this construction would control for purposes of this motion, it's clear that we have to give weight to the entire construction there. So there is a distinction between a unit of data versus an incoming data stream. Specifically, figure two and column 7 clarify in the toy patent that what's actually occurring with this single reformatted transaction or data input is that the incoming data stream comes in and an input line communications processor then parses that incoming data stream to create this single reformatted transaction or data input. And that's why it's referred to as a reformatted transaction. From the incoming data stream, the toy patent then generates a specific stock price or other piece of information to process, to then further process that specific piece of information. So that reference in the court's opinion does not disclose monitoring or detecting changes in an object that is available to the user from a source on the network. The next location, or the next passage... Why is that? What do you say it does disclose? It discloses receiving from some place on the network a data stream, processing it, and then looking at The context of the patent here was the early days of the Internet. When you say the patent, are you talking about toy? I'm sorry. The context of the invention at issue here, the 175 patent, was the early days of the Internet. And in the early 90s. And then this invention came about in 1995. And at that time, web pages and other types of objects were available from a variety of sources on the Internet. And the context was, in order to keep a user from having to go out and manually refresh a web page or from manually accessing that object, I want to be able to offload that functionality to... What about the argument, as I understand it, that the SoCo makes is that the claims that are asserted here don't have a limitation on how the monitoring process takes place. But rather, they only address what steps are taken to perform the process. And in that respect, doesn't toy... And this is a point I think the other side makes in the red brief. In that respect, doesn't toy... Isn't there a strong case for anticipation there? I don't believe so. Because again, coming back to the construction that we're applying here for purposes of this analysis. A unit of data that is available to the user from a source on the network. So, in order to have a distributed... Well, first of all, the claims do require that the objects be distributed. So, to the extent that toy discloses any objects here, they're all internal to the processing within toy. And that object is not available to the user. So, in other words... So, the problem is the process in toy draws the objects out of the data stream. Exactly. That's exactly right. But the user cannot access that particular stock price in toy or that object from some place on the network. But the user may be able to go out and subscribe to the stock type of service and receive the data stream. But the user would still be receiving a data stream and not an object. So, that's the purpose of the 175 patent. Is to look at those situations or to solve the problem of now that you've got objects and not just data streams. Why isn't what toy shows a unit of data available to the user from a source on the network? I mean, it is a unit and it's from a source on the network. It's just the toy process shows it being drawn out from the network. Well, the single reformatted transaction or data input that is parsed and is now internal in the process of the toy system, that is not available to the user from a source on the network. That's the point. But it comes from the network. I mean, toy has gotten the data stream from the network and has operated its machinery, I'm speaking in crude terms, so that it pulls it out. But the user itself cannot go out and access that object directly. And that's the problem that was being solved in the architecture that was disclosed in the 175 patent was objects such as a web page, rather than having to go to that web page and continually manually refresh it. Here, the user would have to have its own specialized hardware to accept the data stream and filter it, process it, and then determine what the object is that it's looking for. So here, in the 175 patent, there is a clear distinction in architecture. The other phrase that the court relies upon to show that the toy patent discloses objects is a very vague reference from Column 7, that input data 121 may comprise stock ticker data, securities or financial data from other sources, or any form of information for which monitoring and notification are desired. And this is a fairly vague statement, and the problem with relying on this is there's no disclosure that would allow one of ordinary skill in the art to understand how to process anything except incoming data streams. The hardware and the disclosure in the toy patent specifically requires that there be an incoming data stream. An incoming data stream that processes that incoming data stream to parse it and determine specific pieces of information that are in there. So there's no enabling disclosure based on this second very vague statement that the district court relies upon. So in both cases, the district court misconstrues or misunderstands the technology disclosed in the toy patent, and therefore it's not an anticipating reference. I also want to touch on the obvious mis- The technology, there's nothing in this patent that confines this to a particular hardware device or particular software, right? In any way, it does it as long as it uses a computer, it's fine, right? Well, not just any computer. The claims are very specific that this is a distributed computing system and that the objects are distributed across the network. So it's not just any computer system. Right, but there's no claim here to the hardware. It says that a distributing computer system was something that existed before this application was filed. There's no claim to particular hardware or software as part of this patent. That's correct, your honor. It's just using the system to accomplish this objective, right? The idea of doing that. Well, it's an invention that was directed at solving a problem that existed within distributed computing systems. That's correct. So coming back to the obviousness issue, it's clear that the district court's opinion on obviousness was based on its misconclusion about the toy reference. And if the court determines that the toy reference does not disclose objects, the holding of obviousness as to all the claims over the toy and RISC patent should also be reversed. So you're saying everything turns on the toy reference? That's exactly right. I think that's what the district... Would you then say that if one disagrees with you on the toy reference, that the two, what were the claims, 53 and 55 are the other ones? Yes. If one disagrees with you with respect to the toy reference, does that mean that you would concede that under RISC 53 and 55 are obvious? That's correct. This does all turn on the toy reference and what is disclosed and the fact that the toy reference and the RISC reference are both completely different architectures. RISC... You want to say the rest of your rebuttal? Yes, I'll say the rest of it. All right. Mr. Anderson. Good morning, Your Honor. I'm Kevin Anderson here on behalf of Verizon Wireless. I'm going to respond to what was in the oral argument as well as the reply brief in just a second, but I want to make three high-level observations. First, there's no dispute that there's really only one narrow distinction alleged to be over toy. Toy discloses everything except they say that it's a different form of data. Second, we have the RISC patent, which discloses the exact form of data and monitoring of that form of data using the exact same language as is in the asserted patent. And in the RISC patent below, the only distinction, they raised only one distinction with the RISC patent, which related to the preamble of the asserted claims, and that's a distinction that they don't even press on appeal. So here on appeal, the RISC patent, for all intents and purposes, has every element of every claim. Third, beyond toy and RISC, you have the fundamental observation that all they are doing in this patent, all these claims recite, the specification may do something different, but all the claims recite is the automation of a notification process that has been done manually since the 1800s. So essentially, they're trying to get a patent for doing something, and the only distinction over these press-clipping services that we included in the record that they've ever cited, either below or this court, is to say, well, the press-clipping services are not computerized, and they're not the internet. And I will concede that the internet didn't exist in the 1800s, but it's still not a patentable distinction to merely computerize a process which has been known for 120 years now. Now, turning to toy, the issue here, and it would be confusing reading the briefs, because the briefs are written in the fashion of wanting to revise the claim construction. But we don't have a dispute about the claim construction here. This isn't an issue where the court's being asked to evaluate the specification of the asserted patent and incorporate all these new limitations that they would like to incorporate into their definition. We adopted their definition, which they told Judge Ilston over the last eight years is a very broad definition, and we used that. So the only issue with respect to toy is whether toy discloses a unit of data that is available from a source to the user on the network. That's the only issue. It's not whether there's other stuff in the specification that they could have claimed. It's not whether they could have done a different definition of object. It's merely whether toy is a unit of data available to a user from a source of the network. It indisputably is. The unit of data is the single reformatted transaction, or what toy itself calls a data input. And there is, which in the example given in toy, he gives a specific example of stock quotes, which are the ticker name, the stock price, and the volume. That's what we collectively, colloquially think of as stock quote. Now, and toy also says he can do any other form of data. So there's no, I don't think there's any dispute, and as we'll show you in terms of whether something is a unit of data or stock quote meets an object, their own infringement contentions in prior cases have said stock quotes are an object. There's also no dispute that toys that stock quotes were available to a user from a source on the network. That is the whole purpose of toy is to automate that process. It starts in the abstract and says we're solving the problem to say that users don't have to go out, and I think he used the word interrogate, data systems out there. In column two at line four to six, again, it says prior art systems, a user had to go out and interrogate a system out there. Column one, it talks about a Weinberg reference where there was a computer terminal where you would sit there and interrogate the computer networks for the stock quotes. That was the problem that he was solving. So there's no issue about whether toy discloses a unit of data, the stock quotes, that is available to a source on the network. Stock quotes even back in 1983, and certainly by 1995 when you would look at toy, stock quotes were available from a source on the network, whether it was via the ticker or whether it was via systems like described in the Weinberg where one could interrogate a data bank out there to get the stock price. Now what the definition of object doesn't include in it are all the things that they try to read into it in their blue and gray briefs. It doesn't include, that definition of object doesn't include anything, any limitation on the form of the data. It's just a unit of data. It doesn't include any limitation whatsoever on the specific form of transmission to the monitoring process. These claims only relate to the process that occurs once the data is at the monitoring process. It doesn't matter whether it came in from a stream. It doesn't matter whether the user had to interrogate. Frankly, it doesn't matter if the data showed up there by magic in the computer. It only matters that it got there and it's monitoring the data. That's all the claims recite. Now to be sure, there are non-asserted claims that recite the step of fetching, which would be an active step of going out and getting and fetching the data. And had that limitation been in the asserted claims, then there might be a dispute about whether toy meets the fetching since toy is, at least in the preferred embodiment, is receiving somewhat passively the data that it's monitoring. But that fetching step isn't in any of the asserted claims. Also, as Your Honor noted, the asserted claims contain no limitation whatsoever on the specific computer architecture once it gets there. These are all method claims. Once it gets there, it's only the steps that go on. So this discussion in the blue and gray briefs about the different pieces of the toy computer that's doing the monitoring are irrelevant to the invalidity analysis here. All that matters is the claims, the language of the claims, not whether toy is doing it with a different architecture. Now, quickly turning to the RISC reference, as I indicated before, there was no distinction below other than an argument based upon the claim preamble, which is presented here. So RISC discloses and, in fact, used the same object-oriented object language as in the asserted claims, as in the specification of the asserted patent. Now, in the reply brief, they make the assertion that RISC is not in the field of use of the invention here. And this field of invention is a little strange. Judge Ilston below used the field of invention, and I think this is a legitimate thing to do, that they cited in their complaint. When they filed the complaint, she held on to their word that that's what it was. And it was a very broad field of invention. Now they want to narrow it down, essentially reading portions of the specification into their field of invention, which is wrong in the first place because it's the claims that define the field of invention. It's particularly interesting that they say RISC is not in the field of invention of this patent because RISC was cited by the patent office, and there's a specific citation where the examiner said, go look at RISC, I find it pertinent to your invention. And not only did the patent examiner cite it, but they characterized it back to the patent office, and not once in that characterization did they say this is a different field of invention. It's simply not, there simply is no difference there. With respect to TOI, facially, it's easy to see that it's the same field of invention. It's monitoring computerized data. In fact, I think we put a comparison side by side of one of the claims of TOI and one of the asserted claims, and they're virtually identical. It's almost as though in 1995 or 96, the technology inventors had those claims to start with. The only thing is slightly different usage of computer terms, object. But as in the agreed upon definition, that computer term object has no inherent meaning other than a unit of data available to a source on the network. Now, as I mentioned, in their infringement contentions, what they seem to be doing here, and this shows up in their gray brief in the first time on page eight, where they draw a distinction between the object and the data that is within that object. And this is, the quote is, it is the object which is being monitored, not the underlying information. As best I can understand it, what they're trying to say is that page eight of the reply brief. It says the quotation is, is the object which is being monitored, not the underlying information. I believe it's at the end of a paragraph. What I believe they're trying to say is that when one looks at a web page, like one goes to Yahoo and gets a stock quote, it is the Yahoo web page that is the object, not the underlying stock information. There's multiple problems with this. To begin with, there's nothing in the definition of object which would create a distinction between the web page and the stock quote information that's in that web page. And more troubling, this is contrary to both the claim construction positions and their infringement positions that they've taken over the last eight years before Judge Ilston in this case and prior cases. And in particular, on the claim construction position, our construction, and Microsoft's in the case before us, of object was that it had to be a document such as a web page. It had to have some particular format. And their response, and this actually fortunately, we don't have the Microsoft claim construction briefs and it didn't reach claim construction here, but their position is on record page 289 and 290 where they summarized our claim construction position and they say no. It's much broader than a document. It's not limited to any particular form such as a document or a web page. It can be all these other things. And beyond that claim construction difference that they've raised now for the first time in their reply brief here, the infringement contentions. If one looks at the infringement contentions served against Verizon Wireless, the specific object that was cited was sports scores. And those infringement contentions for Verizon Wireless, the example we have them in the brief, they're at A336 and it was the sports score. It wasn't an ESPN web page with the sports score as the object. It was the sports score. It was the underlying information that they said was the object. So, the Microsoft ones, Microsoft infringement contentions that they serve are even more compelling. What they said in Microsoft when one is monitoring an object is that one, the example they gave was monitoring a change in the stock price. And that's at A348. So, it's clear that this is a relatively new position that they're taking for the first time in their reply brief. It entirely disputes with their own interpretation of their definition of object, which is, again, a unit of data. It's very broad. Unit of data available to someone on the network. Finally, they raise a number of arguments throughout their briefs that the claim should somehow be limited to the Internet. There's no, none of the language in the claims, and certainly none of the language that's before the court, is limited to Internet. The Internet's discussed in the specification. The Internet is specifically claimed in one independent claim, but it's not a part of any of the claims that are here on appeal. They're all just networks of computers, which clearly toy, rich, everything was, unless the court has any questions. Thank you. Thank you. Just a couple of quick points in rebuttal. Specifically, Verizon's counsel mentions that technology did not, or tries to say that technology did not contend in its appeal brief, that the RISC patent is missing any claim elements, and therefore that the RISC patent, for purposes of this appeal, has all the elements of claims. That's just incorrect. The court's order specifically did not hold that RISC, and specifically I'm referring to page 11 of the court's, the district court's order at 814. The court declined to reach the issue of whether or not the preamble was a limitation in the claim, and therefore did not determine that RISC anticipated the claim. So that issue was not raised on appeal. The only issue was whether or not the claims of the patent were, or certain claims were obvious over the combination of toy and RISC. So, we have very clearly stated in our briefs that RISC is a different architecture, and does not have the element of a distributed computing system in which objects are distributed across the network, which is clearly a limitation of the claims, and that's why when the RISC patent was before the patent office, or at least for that reason, the patent office granted the asserted claims over RISC. And then further, regarding obviousness, it's clear that, again, I do believe that this case turns on the disclosure of toy. However, the RISC patent and the toy patent are completely different architectures. It's important to note that the RISC patent is an object-oriented database system with a single repository on one computer, and it's not about monitoring or detecting changes in objects that are distributed across the network. That's what the 175 patent addresses, and that's clear from the claim language. That's all I have, unless there are any other questions. That's all I have. Thank you. Thank you.